UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VIDA MATHEWS,

                Plaintiff,           REPORT AND
                                                 RECOMMENDATION
    v.                                  03-CV-735

NEW YORK STATE INSURANCE FUND,

                Defendant.

### Preliminary Statement

Presently before the Court is defendant's unopposed motion for summary judgment dismissing plaintiff's *pro se* complaint in its entirety. (Docket #22). In her complaint, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, claiming that she was discriminated during her employment and ultimately terminated because of her gender, age, race and religion. (Docket #1). By Order of Judge Richard J. Arcara, dated November 14, 2006, all dispositive motions have been referred to me pursuant to 28 U.S.C. §636(b)(1)(A)-(B) for a Report and Recommendation. (Docket #33). The following is my Report and Recommendation as to defendant's motion for summary judgment.

### Relevant Facts

Plaintiff Vida Mathews, an African American woman, began her employment with the New York State Insurance Fund on April 26, 2001

as a customer service representative in the Disability Benefits Unit located in Buffalo, New York. See Defendant's Statement of Undisputed Facts, ¶ 1 (Docket #23). Mathews was hired along with four other customer service representatives in response to a new program whereby all New York State disability benefits claims would be handled by the Buffalo office. See Declaration of Debra O'Donoghue, ¶ 4-5 (Docket #24). According to plaintiff's supervisor, Debra O'Donoghue, because Mathews was hired as part of this "pilot project," she was not entitled to any civil service protections and was an "at will" employee. See O'Donoghue Dec., ¶ 3. As a customer service representative, Mathews's duties were to open and process disability benefit claims, communicate with the Workers' Compensation Board regarding hearings and answer claimant's questions. Id. at ¶ 6.

On June 15, 2001, O'Donoghue was contacted by two claimants who stated that their disability checks were late. Id. at ¶ 9. O'Donoghue determined that these two claimants were being processed by plaintiff's unit. Id. Following these phone calls, O'Donoghue reviewed the diary books for plaintiff's unit and discovered that there was no record of whether Mathews's daily assignments had been completed for the past ten days. Id. at ¶ 10. Upon reviewing the files on plaintiff's desk, O'Donoghue discovered that other claimants had not been paid and that Mathews was "seriously behind

2

in her work and was not reporting any problems with the late handling of claims to me when directly questioned." See O'Donoghue Dec. ¶ 13. O'Donoghue and other employees assumed much of plaintiff's workload and by June 26, 2001, her files were up to date. Id. at ¶ 14, 17. O'Donoghue told plaintiff that she would monitor her cases for the next two weeks and that Mathews should tell O'Donoghue immediately if she was falling behind or had questions. Id. at ¶ 18. On July 6, 2001, O'Donoghue reviewed plaintiff's files again and saw that she had continued to miss deadlines. Id. at ¶ 19. When O'Donoghue confronted Mathews about this on July 9, 2001, Mathews refused additional training or assistance, assuring O'Donoghue that she "knew what she was doing." Id. at ¶ 20.

Between July 25, 2001 and July 26, 2001, O'Donoghue repeatedly looked for Mathews's diary book so she could check the status of plaintiff's work, but she could not locate it. Id. at ¶ 21. On the afternoon of July 26, 2001, when O'Donoghue questioned Mathews about the diary book, plaintiff told O'Donoghue that she was keeping her book in her locker. Id. According to O'Donoghue, the diary is not the employee's property and no "meaningful work" can be done in the diary book while it is away from an employee's computer. Id. at ¶ 22. When O'Donoghue confronted Mathews about this, Mathews stated that she believed she was being discriminated

against. Id. at ¶ 23. Based on plaintiff's allegation, an associate examiner was brought in to witness the meeting. Mathews explained her belief that the other customer service representatives were also far behind, but that she was being singled out because of her race. Id. at ¶ 24-25. O'Donoghue refuted plaintiff's allegation, stating that her productivity was 50% less than her colleagues. See O'Donoghue Dec. ¶ 26. O'Donoghue gave Mathews a "counseling memo" and stated that she would review Mathews's work again in two weeks. Id. at ¶ 27. Following their meeting, O'Donoghue met with the claims manager and regional office manager, who decided to terminate plaintiff immediately, based on her "sub-standard work performance." See Declaration of Edward Fries, ¶ 14 (Docket #25); O'Donoghue Dec. ¶ 28-29. Mathews was terminated the following day. Id. at ¶ 30. According to O'Donoghue, she was unaware of plaintiff's age or religion and only counseled plaintiff on her inadequate job performance. See O'Donoghue Dec. ¶ 31-34.

After plaintiff's termination, other customer service representatives were assigned to go through plaintiff's cases. See Declaration of Michael Rosen at ¶ 7-8 (Docket #26); Declaration of Dortha Toporek at ¶ 5-8 (Docket #27). They observed entries in her diary that were inaccurately marked as completed, unprocessed mail in her files and Workers' Compensation Board hearing notices that

4

had not been mailed. Id. Because of the condition of plaintiff's files, some disability recipients continued to receive benefits even though they had returned to work and other claimants were subject to "unwarranted delays" in the opening or processing of their claims. See Rosen Dec. ¶ 9-11.

To date, despite being given the mandatory "Notice to *Pro Se* Litigants" under Local Rule 56.2 as well as an extension of time to respond to the motion (see Docket #31), plaintiff has not submitted any papers in opposition to defendant's motion for summary judgment.

## Discussion

Summary Judgment Standard: Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all ambiguities and inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). This remains true even when a motion for summary judgment is unopposed. The Second Circuit has held:

> the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.

Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). See also Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)(where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial"); Layachi v. Minolta Business Systems, Inc., 2001 WL 1098008, *3 (S.D.N.Y. Sept. 18, 2001)(where "nonmoving pro se party has failed to submit papers in opposition, summary judgment should not be granted automatically"). In conducting its assessment, the district court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., Inc., 373 F.3d at 244.

Analysis under Title VII and ADEA: Under both Title VII and the ADEA, Mathews's claims are subject to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Mathews bears the initial burden of proving a prima facie case by demonstrating the following: (1) she belongs to

6

a protected class, (2) she was qualified for the position held and satisfactorily performed her duties, (3) she suffered an adverse employment action, and (4) this action occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in that class. If Mathews establishes a prima facie case of discrimination, the burden of production shifts to defendant to demonstrate a valid reason for the adverse employment action. Once the defendant employer shows a valid reason for its adverse actions, the inference of discrimination is eliminated, and the burden of production shifts back to the plaintiff to prove "that any seemingly legitimate reason proffered by the employer is, in reality, a pretext for unlawful discrimination." De la Cruz v. New York City Human Resources Admin., 82 F.3d 16, 20 (2d Cir. 1996).

Here, based on the sworn statements of Mathews's co-workers, her direct supervisor and the decisionmaker, I am satisfied that the facts set forth in defendant's Statement of Undisputed Facts are supported by the record. Furthermore, I find that those facts, even viewed in the light most favorable to Mathews, cannot sustain a prima facie case of discrimination. Although Mathews is an African American woman who was terminated, there is no evidence in the record to satisfy the remaining criterion for a prima facie case, namely, that plaintiff was qualified for her position, performed her duties satisfactorily or that her termination

occurred under circumstances giving rise to an inference of discrimination. Rather, the only evidence before the Court demonstrates that Mathews's work performance was well beneath that of her colleagues and that she was repeatedly warned about the deficiencies in her work. See, e.g., <u>Vanhorne v. New York City Transit Authority</u>, 273 F.Supp.2d 209 (E.D.N.Y. 2003)(where plaintiff failed to oppose defendant's motion for summary judgment, court found that he failed to establish a prima <u>facie case</u> because even though he was an African American who had been terminated, there was no evidence that his performance met the reasonable expectations of his employer so as to establish that he was qualified for the position, nor was there evidence of disparate treatment of similarly situated employees); <u>Cawley v. 89th Ave. Realty Corp.</u>, 2002 WL 459918 (E.D.N.Y. Feb. 22, 2002)(in granting defendant's summary judgment motion that plaintiff failed to oppose, court relied on defendant's evidence that during plaintiff's three month probationary period he demonstrated poor job performance in several areas and was repeatedly reprimanded).

Even assuming Mathews could establish a <u>prima facie</u> case of discrimination, defendant has rebutted it by offering a legitimate non-discriminatory reason for her termination. Both the claims manager and her direct supervisor affirmed that Mathews was terminated "solely on the basis of her sub-standard work performance." <u>See</u> Declaration of Edward Fries, ¶ 12-14; O'Donoghue

8

Dec. ¶ 28-29. Once the defendant rebuts the prima facie case of discrimination, the burden shifts back to plaintiff "who must provide evidence that the purported nondiscriminatory reasons provided by [her] employer are not true" and are actually a pretext for unlawful discrimination. Smith v. Principi, 2004 WL 1857582, *7 (S.D.N.Y. Aug. 19, 2004). Here, the record is devoid of any such evidence. In fact, the only allegation to support such a conclusion is found in plaintiff's complaint wherein she states, "the defendant achieved what defendant purposely set out to do ... terminate [me] unfairly." See Complaint at page 4. It is well settled that such conclusory allegations are insufficient to defeat a motion for summary judgment. See Smith v. Principi, 2004 WL 1857582 at *7 (unopposed summary judgment motion granted where "other than one paragraph of conclusory allegations" contained in plaintiff's pro se complaint, plaintiff did not provide any evidence that any of defendant's decisions were based on discrimination). Since plaintiff here has failed to rebut defendant's legitimate, nondiscriminatory reason for her termination, defendant's motion for summary judgment should be granted. See Layachi v. Minolta Business Systems, Inc., 2001 WL 1098008 at *4 (where plaintiff did not submit opposition papers and the only evidence before the court was that he was the lone technician on his team to receive written and verbal warnings for not meeting the minimum productivity standards, court granted

9

summary judgment based on defendant's articulation of a legitimate, nondiscriminatory reason for his termination).

### Conclusion

The Court may grant an unopposed summary judgment motion in a pro se action where "(1) the pro se litigant has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial, and (2) the court is satisfied that 'the facts as to which there is no genuine dispute show that the moving party is entitled to summary judgment as a matter of law.'" Taylor v. Consolidated Rail Corp., 166 F.Supp.2d 652, 654 (N.D.N.Y. 2001) quoting Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996). Those requirements have been met here. Accordingly, it is my Report and Recommendation that defendant's motion for summary judgment be granted.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: April 30, 2007
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Ltd., et al., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: April 30, 2007
Rochester, New York